The next case is 1766 Mbendeke v. Garland. Ms. Devaney. Good morning, Your Honors. May it please the Court. This appeal turns on two issues. First, whether the IJ and BAA fail to properly apply the BAA's own binding precedence in determining Emily committed a particularly serious crime, and second, whether the IJ and BAA improperly determined Emily failed to show it is more likely than not she'll be tortured if she returns to Cameroon. It is clear the IJ and BAA erred in both of these respects, and each of these errors standing alone requires a remand here. The IJ and BAA failed to follow BAA precedent when they did not properly apply the BAA's two-part test for determining whether a crime that is not per se particularly serious is still in the case. In the first step of the test, the IJ and BAA should consider whether the elements of the offense potentially bring it within the ambit of a particularly serious crime. If so, the IJ and BAA move on to the second step and analyze the various factors to determine whether the crime is actually particularly serious. Both the IJ and BAA misapplied the law by failing to conduct the first step of this test. Although the IJ acknowledged he should conduct the first step, he did not actually do so. Instead, he just outlined the language of the general conspiracy statute, the statute under which Emily pled guilty, but he never actually analyzed its elements. The BAA then... Counselor, both steps are required in order for you to prevail, is that correct? Correct, Your Honor. So why can't a judge just go to either one of those first? And then decide that. And go to the second one, just assume the first one's met by you, but then decide that you haven't met the second one. Why can't the court do that? Your Honor, the reason is because in NAM, the BAA said that the two steps needed to be conducted. It said that the first step should happen before the second step is reached. And the problem is, I mean, whether it makes sense or not, and the government itself, and on page 21 admits this test is a bit confusing, that is what the BAA said. And the BAA is required to follow its own precedent, and it didn't here by not conducting the first step of the test. Simply stating the elements need to be analyzed and then outlining the language of the statute is just not sufficient. Some minimum level of analysis is required. And because the IJ and BAA failed to follow its precedent, it's not settled whether Emily's crime actually constitutes a particularly serious crime, nor did the IJ and BAA provide enough analysis for this court to actually review that determination. So the BAA clearly needs another opportunity to analyze Emily's case properly and clarify its own test if it decides to do so. The IJ and BAA also ignored another piece of precedent in coming to its decision Emily committed a particularly serious crime, NRALS, which is a published BIA decision that held a non-violent immigration offense, bringing a non-citizen into the United States, was not a particularly serious crime. The key facts of NRALS are similar enough to Emily's case that the IJ and BAA should have analyzed it or at least distinguish it. And in its brief, the government also failed to completely address this case. As to the similarities between the two cases, in both, it was a non-violent felony immigration offense. In both, it involved a commercial gain. In both, the sentence for the offense was relatively short. And in both, it was the offender's first offense. So given all these similarities, there's no reason why the IJ and BAA disregarded NRALS. And as this court has stated, in Padmore v. Holder, the BAA just cannot ignore its own precedent, which it has done twice now with NRALS and NRANOM. So this case should be remanded on those grounds so the BAA can analyze or distinguish NRALS and again clarify its body of law. As for the torture issue and Emily's eligibility for cap protection, the IJ and BAA erred in finding that Emily failed to show that it's more likely than not she will be tortured if she returns to Cameroon. First of all, toward discrimination, you would agree that discrimination, she was subject to discrimination and will be subject to discrimination if she returns to Cameroon. That's about the same thing as torture, right? I mean, it can't be that every person discriminated against on the basis of their sexuality is per se tortured by a virtue of that, right? Would you agree with that? Yes, I would agree. Discrimination does not amount to torture. As far as grievous bodily harm under the appropriate reg, you would agree with that, right? Bodily harm and also mental anguish. Yeah, but I think that here, the mental anguish is a separate thing, but it's also specified as to what might constitute mental anguish in the provision. The question I have is, what is the proof of likelihood of torture when she goes back except for sort of generalities? She was subject to abuse by her stepfather's boss, who was a colonel in the army when she was 10 years old, and a military man raped her when she was 14 years old. Is that correct? That's correct, yes. Yeah, but those were government actors, presumably, although they were not acting in their capacity as government actors, and there's a question about whether that can constitute torture in its own right under the language of the reg and the Convention against Torture. But those would be the ones you're pointing to. Is that right? Well, not just that, Your Honor. Those are parts of the past persecution Emily endured, but there's also evidence in the record that the IJ ignored, and the BIA as well, that demonstrated she is personally at risk of torture in the future as well. For example, the expert said, because Emily's now notorious in her community, since her ex-wife outed her to her family and friends back in Cameroon, that she's not a heterosexual male, this makes it even easier for vigilante groups to find her, and that's in the record on pages 163 and then 676 through 77. One minute. Yeah. Why does that rise to the level of a probability rather than just a possibility? And we know that past torture here under the Act, the most you can draw from it is the possibility of torture. It can't bring you home on probability. And why does this other evidence that you're talking about bring you home on probability? When in fact, she lived there for a number of years without a problem, and would be subject, presumably, to death now that it's out. But how do you get to the idea that someone is going to die with the state's participation or acquiescence? Well, you're under the Act. Oh, sorry. Go ahead. The expert testified as well, quote, that there was a strong likelihood that Emily would be tortured. And because the IJ found the expert credible, there's no reason why that specific statement should be ignored. And in fact, it was completely mischaracterized in the IJ misheard her, misquoted her and said that she did not say that. But on page 212 of the record, she said there is a strong likelihood of her being tortured. And as to your point about... I'm confused about what the expert meant by the word torture. Because how is it the same as in the, you know, in the regulation? How is it the same as in the regulation of acquiescence by the government or action by the government as opposed to just being physically harmed by citizens? The reason... There seems to be broad clues as if maybe the government's participation wasn't really required. I understand your concern. But the issue is that in Cameroon, it is illegal to be gay or any member of the LGBTQ community. And because of that, the government essentially looks away and allows for these vigilante groups to enact justice in their view by attacking and torturing and killing people because of their gender. And also, the jails are notorious for their torture of inmates. And that would be another risk for Emily as she's at serious risk for being arrested now. So, if you're arrested, you're taking the position, you take the position that everybody who's arrested for violating the law in this regard is automatically a, has a claim under the C.A.T. No, you're not. Or not everybody. However, there is... In this circumstance, she would have a claim because there are substantial factors that lead to a strong likelihood of her being tortured. And one of them is that she would likely be arrested because her community would likely turn her in, as the expert stated. And Cameroonian prisons are notorious for their torture, including electrocution, beating, starvation. So, there is a strong likelihood that she would suffer that if she returns to Cameroon. I'm sorry, can I just ask you, you keep talking about clear likelihood, but that's not our standard, right? It's more likely than not, right? It's 51%. Your Honor, that is the standard, but I would argue that it's not 51% necessarily. As we noted in our... Not 51%? Well, yes, 51% generally. However, not, the problem, one of the other issues we raised in our brief is this kind of mathematical formulation that the I.J. was placing on this more likely than not standard. As the Seventh Circuit held in Velazquez-Bonagas versus Lynch, these numerical limitations are really difficult for the standard, and they assume that it can be mathematically equated. Well, okay, take the math out of it, but 50% plus a peppercorn or whatever, but it has to be more likely than not. I mean, you have to look at the likelihood that something's going to happen, the likelihood that something's not going to happen, and in this case, the likelihood of it happening has to be greater than the other way around, right? I mean, we deal with these probabilistic assessments in other situations, like in criminal law. You can have probabilities of something happening, and you have reasonable suspicion, or you have probable cause, but here it's the equivalent of a preponderance of the evidence, right? Correct, Your Honor, yes, and... Yes, that's why I'm confused. You keep talking about a clear probability, but that, for example, in criminal law would get you way over the hurdle for, say, probable cause, but it would never get you there for preponderance of the evidence, so I guess I just want to be careful when we're talking about the standards. Let's talk about the standard that applies to this claim. Absolutely, Your Honor, and to clarify, when I say the strong likelihood, I'm quoting just the would also equate to more likely than not. I think the expert, although she used different verbiage, the IJ could have found that that verbiage amounted to more likely than not as well. But then in that case, couldn't the judge have found the other way and say, well, you never said it's more likely than not. You just keep saying it's very likely, strongly likely, and that's not our standard here. Not exactly, Your Honor, because the BIA has held that experts can, although they can ask questions of experts, they can't pose them legal standards in matter of crusado. So asking her whether it is more likely than not is a legal standard, and it was improper for the IJ to do so, which he did ask her that. So she stated as much in her own language, regardless of whether she said the words from the exact legal standard. Okay, thank you, counsel. Oh, I'm sorry. One more question. I thought there was a question about her testimony, the expert's testimony, as whether there was, it was likely that she would be when she went back or not likely. There were only two versions given. That is correct. There was a question about it. However, that was a mischaracterization of the record. What happened was the IJ asked her whether it was more likely than not, the improper question, whether Emily would be tortured, and the expert answered there was a strong likelihood, but then the IJ kept pressing with the mathematical questions to assume a certain number of people and then divide the percentages and such, and then the expert said she couldn't say with certainty whether Emily would be tortured, and the IJ misconstrued that and mischaracterized it, saying that she didn't say it was more likely than not that Emily would be tortured, but she did indicate as much earlier in her testimony, and certainty is not the standard under which cats decide. Whether she's certain or not is irrelevant to whether Emily is eligible for deferral of removal. I see. Okay. Okay. Thank you, counsel. We'll hear from Ms. Khoury for government. May it please the court, Jennifer Khoury, on behalf of the Attorney General. I guess I'll just jump right into the cat argument and into what the expert testified to. She did testify to Ms. Mbendig having a strong likelihood of torture, and that was her language, and then later on, the immigration judge then asked her to assume the population of Cameroon and then assume that a certain percentage is homosexual, and then asked her if Ms. Mbendig would more likely than not be tortured in Cameroon, and the expert stated that she could not say with certainty, no. I don't understand why we would credit her testimony that there is a strong likelihood that she would not be tortured in Cameroon, but it's more likely than not. That is exactly what she testified. Sorry? Beyond that, we're reviewing. We have to conclude for the petitioner to prevail that the opposite would be compelled based upon the IJ's testimony, and the IJ's testimony, in other words, our review implies and carries with it deference to the IJ, deference to the BIA, under the normal rules that apply of substantial evidence here, and therefore, I have difficulty, and I'm going to ask, maybe your adversary can address this, why we wouldn't give definite versions, either of which could be true, and the IJ picks one of them. Why we're in a position to second-guess that. That's right, your honor. The record has to compel a different conclusion here, and based upon the expert's testimony, when she directly stated that it is not more likely than not, and based upon the country conditions that show that there are imprisonments for homosexuality, and that there is discrimination and harassment, and in some cases, torture, that is not enough to show that Ms. Mabendik herself is going to be tortured in Cameroon, and the agency, the agency based its decision based upon that sound evidence, and the record just does not compel a finding otherwise. As to the particularly serious crime determination, the immigration judge expressly listed out the correct law that applies, and then expressly listed out the elements of the marriage fraud crime that Ms. Mabendik was asking for. The immigration judge did not say that one sentence, but went on to the other factors, therefore indicating that he found the crime to fall within the category of a potentially particularly serious crime, and that's enough. He then conducted the right sound analysis, and the petitioner keeps arguing as if this were such a benign crime, but this is within the discretion of the immigration judge and the agency, and the truth is that it was an extensive fraud on the immigration system, and that it would have continued, as the immigration judge pointed out, had Ms. Mabendik not been caught. This is a serious crime, and it's within the discretion of the agency, and it falls within a reasonable determination, and not an abuse of discretion to find this to be a particularly serious crime. On that, I think I've addressed the two issues. If the court doesn't have any more questions, I will end on that. Thank you. Thank you, counsel. Ms. Devaney, you have two minutes for rebuttal. Thank you, your honor. In terms of the CAT issue, I apologize, in terms of the particularly serious crime issue, the one sentence, as opposing counsel stated, is not enough. This court has directly stated that some minimum level of analysis is required from the IJ and BIA, and it's improper to assume what the BIA might have done had they conducted the first step of the test. We don't know whether they would have concluded whether Emily's crime fit within the It might have, but the issue is that the BIA set forth its precedent, and it should follow it. And we are not asserting that Emily's crime was not a lengthy, problematic crime. However, she herself recognizes that, and she atoned, and she's remorseful. However, that does not necessarily mean her crime is particularly serious. The BIA needs to follow its own precedent for determining that. And in terms of CAT, again, the transcript sets forth precisely what the IJ said with regard to the expert, and the expert simply did not say that there was not more likely than not standard here. There is a strong likelihood Emily will be tortured if she returns to Cameroon, which the expert stated. Emily also testified to that fact, and all the country conditions materials support that. The IJ and BIA make countless errors in their decisions in this case, and as such, the court should vacate the decision of the BIA and remand it back down so they can rectify all these errors. Thank you, counsel. We'll take the matter under advisement.